**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

**DEMI CORDEIRO**

**Plaintiff,**

**v.**

**MARK COUTURE, JEFFREY BELESKI, PATRICK O'TOOLE, PAULITA HANNAH in their individual and official capacities, and the TOWN OF WEST SPRINGFIELD**

**Defendants.**

# COMPLAINT

## INTRODUCTION

1. This is a civil rights action for the wrongful detention, excessive force, unlawful arrest, and malicious prosecution of Plaintiff after she sought police assistance at her home. On or about December 3, 2023, officers of the West Springfield Police Department unjustifiably demanded Plaintiff submit to protective custody, pursuant to a defective departmental policy that does not require exigent circumstances for in-home protective custody. When she lawfully refused, the officers physically attacked her, tased her in violation of West Springfield Police Department policy, falsely claimed she assaulted them, and arrested her, causing severe pain and humiliation, for which she seeks damages and relief.

**JURISDICTION AND VENUE**

2. This Court has jurisdiction over Plaintiff's federal claims pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3) and (4), as this action arises under 42 U.S.C. § 1983 and the United States Constitution.
3. This Court has supplemental jurisdiction over Plaintiff's state law claim pursuant to 28 U.S.C. § 1367(a), as they arise from the same case or controversy.
4. Venue is proper in the District of Massachusetts under 28 U.S.C. § 1391(b), as the events giving rise to this claim occurred in West Springfield, Hampden County, Massachusetts, within this judicial district.

**PARTIES**

5. Plaintiff, Demi Cordeiro, is an adult resident of West Springfield, Hampden County, Massachusetts.
6. Defendant, Town of West Springfield, is a municipal corporation organized under the laws of the Commonwealth of Massachusetts, responsible for the operation, policies, and supervision of the West Springfield Police Department.
7. Defendant Officers Mark Couture, Jeffrey Beleski, Patrick O'Toole, and Paulita Hannah are employees of the West Springfield Police Department, acting under color of state law during the incident. They are sued in their individual and official capacities.

**FACTUAL ALLEGATIONS**

8. On December 3, 2023, Plaintiff called the West Springfield Police Department seeking assistance at her residence in West Springfield, Massachusetts, because she believed her parents were wrongfully withholding her car keys.

9. Plaintiff, feeling distressed and seeking to leave, asked her parents for her car keys. Her parents, concerned for her well-being, believed she was not in a condition to drive safely.
10. Despite Plaintiff's emotional distress over the situation, she was not "incapacitated" as required for protective custody under M.G.L. ch. 111B, § 9A. Additionally, Plaintiff was in her private home with her parents present.
11. The West Springfield Police Department Police policy states "[a] person may be taken into protective custody from his or her own home" without more. The policy fails to require exigent circumstances for in-home protective custody.
12. Defendant Officers Couture and Beleski arrived at Plaintiff's residence in response to her call and were initially invited into the home by Plaintiff.
13. When the Defendant Officers Couture and Beleski refused to help Plaintiff with obtaining her car keys, she became frustrated, dismissed the officers, and revoked her consent for them to remain in her home.
14. Despite Plaintiff's revocation of consent, Defendant Officers Couture and Beleski did not leave and instead requested an ambulance for Plaintiff.
15. At the time the ambulance was requested, Plaintiff was not suffering any medical condition warranting emergency treatment, was competent to refuse medical treatment, and there was no court order compelling her to accept medical treatment against her will.
16. When the ambulance arrived, Plaintiff clearly indicated her non-consent to transport by retreating to the bathroom in her home.
17. While Plaintiff was using the toilet, Defendant Officer Couture announced to Plaintiff that the ambulance had arrived and that "[Plaintiff] can either come out on her own, or [they would] go in and get her."

18. Despite Plaintiff's lawful refusal to leave the bathroom, Defendant Officers Couture and Beleski, physically imposing in stature, forcibly breached the bathroom door and unlawfully invaded her private sanctuary with overwhelming force.

19. At the time Defendant Officers Couture and Beleski unlawfully invaded Plaintiff's bathroom, there was no justification for a protective custody; no reasonable suspicion that a crime had occurred, was occurring, or was about to occur; no court order authorizing detention; and no warrant permitting entry into Plaintiff's home or bathroom.

20. Upon entering the Plaintiff's bathroom, Defendant Officers Couture and Beleski found Plaintiff naked from the waist down, as she was using the toilet.

21. While Plaintiff was half-naked, Defendant Officers Couture and Beleski, both male, dragged her out of the bathroom in full view of her father, causing severe humiliation.

22. While Plaintiff was face down and naked from the waist down, Defendant Officer Beleski deployed a taser on her bare buttocks in violation of West Springfield Police Department policy.

23. The taser deployment caused Plaintiff severe physical pain and lasting scars, as well as profound emotional distress, exacerbated by her father's presence.

24. To justify their actions, Defendant Office Couture falsely alleged that Plaintiff assaulted him, despite her non-threatening conduct and Defendant Officers Couture and Beleski's initiation of the physical confrontation.

25. Plaintiff, who is 5'3" and weighed approximately 120 pounds, did not assault officers, as confirmed by her father, who had a clear view of the entire incident.

26. Based primarily on their false assault and battery allegations, Defendant Officers Couture and Beleski arrested Plaintiff without probable cause.

27. After placing Plaintiff in custody, Plaintiff was transported to a hospital, where she was immediately discharged, confirming she had no medical emergency.

28. Defendant Officer O'Toole acted as the applicant for Defendant Officers Couture and Beleski and applied to the Springfield District Court to issue charges for misdemeanor Assault and Battery on a Police Officer in violation of M.G.L. ch. 265, § 13D, misdemeanor Resisting Arrest in violation of M.G.L. ch. 268, § 32B, and felony charge of Assault and Battery by means of a Dangerous Weapon (firearm) under M.G.L. ch. 265, § 15A based, in pertinent part, on the narratives submitted by Defendant Officers Couture and Beleski.

29. Defendant Officer O'Toole applied to the Springfield District Court for a firearm-related felony against Plaintiff, lacking any probable cause or factual support whatsoever in the provided narratives. No evidence or allegation supported Plaintiff's use or possession of a firearm in the narratives.

30. Defendant Officer Hannah, as approving officer, approved Defendant Officers Couture and Beleski's narratives in support of an application for a criminal complaint despite the narratives lacking justification for a protective custody, having no exigent circumstances for an in-home detention, and no probable cause for a crime.

31. Defendant Officer Hannah, as approving officer, approved Defendant Offices Couture and Beleski's baseless firearm-related felony charge against Plaintiff, despite no evidence or allegation of Plaintiff's firearm use or possession.

32. On December 4, 2024, Plaintiff was arraigned on the criminal charges before the Springfield District Court. The unfounded charge that Plaintiff committed an assault and

battery on a police officer using a firearm subjected Plaintiff to intense scrutiny from the Court during hearings, causing significant emotional distress and reputational harm.

33. During the prosecution of the criminal case, the Plaintiff's Defense Counsel brought the lack of factual support of the felony firearm-related charge to the attention of the Commonwealth of Massachusetts - Hampden District Attorney. In response, a *nolle prosequi* was entered on that charge on May 6, 2024.

34. On May 6, 2024, Plaintiff's Defense Counsel filed a Motion to Suppress Observations and Evidence, arguing there was no legal justification for the entry into the Plaintiff's bathroom based on protective custody or reasonable suspicion of a crime.

35. On July 10, 2024, prior to the hearing on Plaintiff's Motion to Suppress, the Hampden District Attorney voluntarily dismissed the remaining misdemeanor assault and battery on a police officer charge and moved the Springfield District Court amend the remaining count of resisting arrest to a civil violation pursuant to M.G.L. ch. 277, § 70C, effectively ending the criminal prosecution of the case without a conviction.

36. At all relevant times, Defendant Officers were acting under color of state law as employees of the West Springfield Police Department. Defendant Officers' actions were performed within the scope of their employment and pursuant to the authority granted by the Commonwealth of Massachusetts.

37. The Town of West Springfield failed to adequately train, supervise, and discipline officers regarding the lawful use of protective custody, warrantless entries, arrests, excessive force, taser deployment, and accurate filing of criminal charges, as well as its maintenance of a legally defective policy that caused the violation of Plaintiff's rights.

**COUNT I: VIOLATION OF 42 U.S.C. § 1983 – FOURTH AMENDMENT - UNLAWFUL SEARCH AND SEIZURE - AGAINST DEFENDANT OFFICERS COUTURE AND BELESKI**

38. Plaintiff incorporates by reference all preceding paragraphs of this Complaint as if fully set forth herein.

39. Defendant Officers Couture and Beleski subjected Plaintiff to an unreasonable seizure in violation of the Fourth Amendment to the United States Constitution.

40. Defendant lacked any facts or circumstances sufficient to warrant a prudent person to believe Plaintiff had committed or was committing a crime. Plaintiff was inside the bathroom of her home with the door closed, engaging in no observable unlawful activity.

41. To the extent Defendant Officers Couture and Beleski's invasion of Plaintiff's bathroom was an investigative stop, Defendants lacked specific, articulable facts supporting reasonable suspicion that Plaintiff was engaged in criminal activity. Plaintiff's verbal non-compliance with commands to go into an awaiting ambulance did not provide a basis for a Terry stop.

42. Defendant Officers Couture and Beleski's claim of protective custody was a pretext for an unlawful seizure, as no reasonable officer could have believed Plaintiff was "incapacitated" under the statutory definition for protective custody.

43. Defendant Officers Couture and Beleski lacked the requisite exigency to support a protective custody of a subject within their own home pursuant to the 4th Amendment.

44. Defendant's use of a taser to effect the seizure further rendered it unreasonable, as the force was disproportionate to any need, given Plaintiff's passive non-compliance and lack of threat.

45. Incident to the unlawful arrest, Defendant conducted an unreasonable search of Plaintiff's person, in violation of the Fourth Amendment. The search lacked probable cause, consent, a warrant, or any applicable exception, as the underlying arrest was itself unlawful.

46. As a direct and proximate result, Plaintiff suffered physical injury, emotional distress, severe humiliation, and deprivation of her constitutional rights.

**COUNT II: VIOLATION OF 42 U.S.C. § 1983 – FOURTH AMENDMENT - EXCESSIVE FORCE - AGAINST DEFENDANT OFFICERS COUTURE AND BELESKI**

47. Plaintiff incorporates by reference all preceding paragraphs of this Complaint as if fully set forth herein.

48. Defendants Couture and Beleski subjected Plaintiff to a seizure within the meaning of the Fourth Amendment to the United States Constitution when they attempted a protective custody without lawful justification by physical force, initiated an arrest without probable cause for a crime, and intentionally deployed a taser, striking Plaintiff and restraining her freedom of movement.

49. Considering there was no probable cause for a crime, utilization of the taser to effectuate a protective custody amounts to objectively unreasonable force.

50. Defendant Officer Beleski's use of the taser on Plaintiff was not in accordance with West Springfield Police Department policy.

51. At the time Defendants Couture and Beleski invaded the Plaintiff's bathroom, Plaintiff posed no immediate threat to Defendants Couture or Beleski or others. Plaintiff was unarmed, communicating with officers, and making no aggressive movements whatsoever.

52. Plaintiff was not actively resisting arrest or attempting to evade arrest by flight. Plaintiff's non-compliance was limited to verbal refusal to go into the awaiting ambulance, which constitutes passive non-compliance rather than active resistance.

53. The deployment of the taser, which caused Plaintiff severe pain, muscle contractions, physical injury, and emotional trauma, was disproportionate to any need for force. Less intrusive measures, such as continued verbal commands or minimal physical restraint, were feasible and sufficient to address Plaintiff's passive non-compliance.

54. As a direct and proximate result, Plaintiff suffered physical injury, emotional distress, severe humiliation, and deprivation of her constitutional rights.

**COUNT III: VIOLATION OF 42 U.S.C. § 1983 – FOURTH AMENDMENT MALICIOUS PROSECUTION - AGAINST DEFENDANT OFFICERS COUTURE, BELESKI, O'TOOLE, AND HANNAH**

55. Plaintiff incorporates by reference all preceding paragraphs of this Complaint as if fully set forth herein.

56. Pursuant to legal process, including an arrest and application for a criminal complaint, Plaintiff was seized within the meaning of the Fourth Amendment. This seizure included arrest, a forced medical visit, detention, and court appearances before the Springfield District Court, which constituted significant restraints on Plaintiff's liberty. The seizure was unreasonable because it was initiated and continued without probable cause, in violation of the Fourth Amendment.

57. Defendant Officers Couture, Beleski, O'Toole, and Hannah caused the criminal proceeding by submitting false police reports, providing misleading applications to support a criminal complaint, and communicating a fabricated allegation to the Court, resulting in the filing of unfounded charges against Plaintiff.

58. Defendant Officers Couture and Beleski lacked probable cause to initiate or continue the criminal proceeding. The allegations of assault and battery and resisting arrest were fabricated, as Plaintiff did not initiate physical contact and witness statements contradict officers' claims.

59. Defendant Officer O'Toole, as applicant for the criminal complaint, applied to the Springfield District Court for a felony charge against Plaintiff when no reasonable officer could have believed Plaintiff committed assault and battery by means of a dangerous weapon (firearm) based on the available reports. The narratives provided by officers made no mention whatsoever of Plaintiff's use or possession of a firearm.

60. Defendant Hannah, as approving officer, knowingly or recklessly approved Defendant Officers Couture and Beleski's narratives in support of an application for a criminal complaint despite Defendant Officers Couture and Beleski having no justification to subject Plaintiff to a protective custody within her home or probable cause to arrest for a crime.

61. Defendant Hannah, as approving officer, approved the firearm-related felony charge notwithstanding that the charge was wholly unsupported, as no firearm was recovered and no witness reported a firearm.

62. Defendant Officers Couture, Beleski, O'Toole, and Hannah's failure to verify the firearm charge or the inclusion of false information in the application for criminal complaint to the Springfield District Court demonstrates reckless disregard for the truth.

63. The felony charge of assault and battery by means of a dangerous weapon (firearm) terminated in Plaintiff's favor on or about May 6, 2024, when the charge was voluntarily dismissed by the prosecution pursuant to the filing of a *nolle prosequi*.

64. On July 10, 2024, the charge of assault and battery on a police officer was voluntary dismissed by the prosecution, and the remaining count of resisting arrest ended without a criminal conviction.

65. Defendant Officers' actions directly caused Plaintiff's unconstitutional seizure and resulting harms, including loss of liberty, physical pain and injury from taser use, emotional distress, reputational harm, financial losses from court costs, and trauma from the unwarranted protective custody attempt. The officers' malicious conduct proximately caused these injuries.

**COUNT IV: VIOLATION OF 42 U.S.C. § 1983 – MONELL LIABILITY - AGAINST TOWN OF WEST SPRINGFIELD**

66. Plaintiff incorporates by reference all preceding paragraphs of this Complaint as if fully set forth herein.

67. The Defendant, Town of West Springfield maintained an official policy or custom that authorizes protective custody in private homes under M.G.L. ch. 111B, § 9A, based solely on drug-related incapacitation, without requiring exigent circumstances, in violation of the Fourth Amendment.

68. The Defendant, Town of West Springfield's maintenance of a defective policy authorizing warrantless home entries for protective custody without exigent circumstances, demonstrates reckless disregard for Plaintiff's constitutional rights.

69. The Defendant, Town of West Springfield, failed to train officers on the lawful criteria for protective custody under M.G.L. ch. 111B, § 9A, and the Fourth Amendment requirements for warrantless home entries, which mandates incapacitation in addition to exigent circumstances.

70. The Defendant, Town of West Springfield failed to train officers on respecting revoked consent and the constitutional limits of warrantless home entries, leading to Officers Couture and Beleski's forcible breach of Plaintiff's bathroom after she revoked consent.

71. The Defendant, Town of West Springfield failed to train officers on the West Springfield Police Department's Electrical Weapons policy, causing Officer Beleski to unjustifiably tase Plaintiff in violation of West Springfield Police policy.

72. The Defendant, Town of West Springfield failed to train officers on verifying the factual basis for criminal charges, particularly felony charges, leading to Defendant Officer Hannah's approval of the firearm related charge and Officer O'Toole's application to the Springfield District Court for the firearm-related charge, without any supporting evidence.

73. The Defendant, Town of West Springfield failed to supervise officers' application of protective custody and warrantless entry protocols, allowing Defendant Officers Couture and Beleski to act without oversight in violation of Constitutional requirements.

74. The Defendant, Town of West Springfield failed to supervise taser deployments, permitting Defendant Officer Beleski to use a taser in violation of West Springfield Police policy.

75. The Defendant, Town of West Springfield failed to supervise the filing of criminal complaints, allowing Defendant Officer Hannah to approve a baseless felony charge and for Defendant Officer O'Toole to apply to the Springfield District Court for a baseless felony charge without review or correction.

76. The Defendant, Town of West Springfield maintained a custom of failing to discipline officers for excessive force, unlawful searches and seizures, false allegations, or reckless

filing of baseless charges, fostering a culture of impunity that enabled Defendant Officers Couture and Beleski's false assault allegations and the filing of an unsupported firearm charge by Defendant Officers O'Toole and Hannah.

77. There is a likelihood that further discovery will reveal a pattern of similar violations, such as prior instances of unlawful home entries for protective custody, excessive force, or application of baseless charges, further evidencing the Defendant, Town of West Springfield's deliberate indifference.

78. The Defendant, Town of West Springfield's policies, customs, or practices were the moving force behind Plaintiff's constitutional injuries, as the defective policy authorizing protective custody in homes under M.G.L. ch. 111B, § 9A, without exigent circumstances, directly caused Defendant Officers Couture and Beleski's unlawful warrantless entry and detention.

79. As a direct and proximate result of the City's policies, customs, or practices, Plaintiff suffered physical injuries, including lasting scars from the taser deployment; severe emotional distress and humiliation; and was subjected to baseless charges, reputational harm due to intense court scrutiny, and deprivation of her Constitutional rights.

**COUNT V: MASSACHUSETTS CIVIL RIGHTS ACT (MCRA) M.G.L. CH. 12, §§ 11H, 11I - AGAINST DEFENDANT OFFICERS COUTURE, BELESKI, O'TOOLE, AND HANNAH**

80. Plaintiff incorporates by reference all preceding paragraphs of this Complaint as if fully set forth herein.

81. Defendant Officers Couture and Beleski, after Plaintiff revoked consent for their presence in her home, used intimidation and coercion by forcibly breaching her bathroom door, without probable cause or exigent circumstances, in violation of Article 14 of the

Massachusetts Declaration of Rights, thereby interfering with her right to be free from unreasonable searches

82. Defendant Officers Couture and Beleski employed coercion by dragging Plaintiff half-naked out of her bathroom and into the hallway in view of her father and deploying a taser in violation of West Springfield Police Department policy, constituting excessive force and interfering with her Fourth Amendment and Article 14 rights to be free from unreasonable seizures.

83. Defendant Officers Couture and Beleski used intimidation by falsely alleging Plaintiff assaulted them, despite her non-threatening conduct, to justify her arrest without probable cause, further interfering with her Fourth Amendment and Article 14 rights.

84. Defendant Officers O'Toole and Hannah used coercion by approving and applying for a baseless felony charge of assault and battery by means of a dangerous weapon (firearm) under M.G.L. ch. 265, § 15A, without any evidentiary support.

85. The actions of Defendant Officers Couture, Beleski, O'Toole, and Hannah constituted threats, intimidation, or coercion within the meaning of the MCRA, as they involved physical force, false accusations, and baseless legal proceedings designed to compel Plaintiff's submission and deprive her of her constitutional rights.

86. As a direct and proximate result of Defendants' violations of the MCRA, Plaintiff suffered physical injuries, including lasting scars from the taser deployment, severe emotional distress and humiliation, reputational harm due to baseless criminal charges, and deprivation of her federal and state constitutional rights.

**REQUEST FOR RELIEF**

**WHEREFORE**, Plaintiff respectfully requests that this Court:

A. Award compensatory damages in an amount to be determined at trial.

B. Award punitive damages against Defendant Officers Couture, Beleski, O'Toole, and Hannah in an amount to be determined at trial.

C. Award nominal damages to vindicate the violation of Plaintiff's constitutional Rights.

D. Enter a declaratory judgment that West Springfield's policy of in-home detention via protective custody without exigent circumstances violates the Fourth Amendment.

E. Issue injunctive relief requiring the Town of West Springfield to revise its policy and training to require exigency for an in-home detention based upon protective custody; and

F. Award Plaintiff's reasonable attorney's fees and costs pursuant to 42 U.S.C. § 1988 and M.G.L. ch. 12, § 11I.

G. Grant such other and further relief as the Court deems just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiff demands a trial by jury on all issues so triable.

Respectfully submitted,
For the Plaintiff,
By her Attorney,

/s/ *Matthew Hutchinson*

Matthew Hutchinson, BBO 684268
Law Office of Matthew S. Hutchinson, Esq.
99 Church Street
Chicopee, MA 01020-1888
(413) 331-2287
attorneyhutchinson@comcast.net

Dated May 15, 2024